Good morning. Judge Joe Pryor and I appreciate our visitor from the Northern District of Alabama, Judge Dave Proctor, who is here with us today and tomorrow to assist us with our work. If we ever have a visitor these days, our visitors are district judges from our year with our president, and Judge Proctor is with us many times. He doesn't get a break from his district docket when he does this. This is work over and above that work, so we especially appreciate it. We won't have as much of that in the next year now that the vacancy on our court has been filled, and we're glad it has been filled, but it nevertheless is a nice experience to have with the perspective of one of our district judges who can tell us maybe what's wrong with our precedents. This morning, we have three appeals to hear. We have limited time this morning. Counsel, we know what your cases are about. We've read your briefs, the authority cited in your briefs, at least portions of the record, so in your limited time, you should get straight to the heart of the arguments you want to make sure we hear this morning. You're not going to waive anything by not addressing something that's in your briefs. Do pay attention to our traffic lights. When the red light shines, it's time to finish. If you're answering a question from the court, though, you can finish your answer, but otherwise, be mindful of the required time. And if you're finishing an answer from the court, you won't lose rebuttal time in finishing. Our first case is United States v. Joins. Mr. Suma? May it please the Court, I'm Richard Suma for Mr. Webb. I'd like to discuss two questions that arose in the trial proceedings below. First is whether the officer's mistake in searching a Nissan outside the curtilage of a mobile home was objectively reasonable. Second is whether officers had probable cause in any event to search the Nissan. If the Court prefers more interested in one question than the other, I'll take direction. If not, I'll proceed. The officer's mistake of fact was not objectively reasonable because the Fourth Amendment imposed upon the officers a duty to make a reasonable effort to ascertain and identify the place to be searched. That includes a reasonable effort to ascertain the extent of any curtilage. The record does not suggest the officers made such a reasonable investigation, and the district court made no finding that the officers made a search warrant. What does the search warrant say exactly? It authorizes search of the premises and any vehicles on the curtilage. Is that what it said in the search warrant, though? I thought it said the premises, the curtilage, and vehicles on the premises. I thought it said vehicles in the curtilage. I'll check it when I sit down. Please. Okay. Well, regardless of that, wouldn't the automobile exception apply? Automobiles, the Supreme Court says, are, you know, because of their mobile nature, where there's It seems to me that, based on what the officers already had with a search warrant, what they saw in the residence, what they found in the box outside the residence, that they had more than probable cause to search the vehicle. Thank you, and I'll explain why I believe the officers did not have probable cause. I believe the facts known to the officers indicate that the meth found in the Nissan box was associated with the mobile home and not from, not the Nissan. Now, let me step back just one step and say the officers were able to obtain a search warrant because they had probable cause to believe methamphetamine or perhaps other drugs would be found inside the mobile home. So they executed the search warrant, and they found exactly what they expected to find, methamphetamine, on the premises of the mobile home, on the porch, on the top step. Cook testifies, right, that Grant told him that Webb and Joins had arrived at the home in the silver car parked out front, right? Yes, and that... And Webb drove, Joins was the passenger, right? Cook also stated Grant told him the bag of meth that the officers had found on the front steps belonged to Joins and had come from the silver vehicle in which they arrived, right? Right. But that is the worst fact from our side of the case. Yes. And I'm going to explain why I think the Court should not rely on that. First of all... Rely on what, testimony? No, you can, but I want, I'm asking the Court to compare that statement from evidence that was introduced at trial. So that statement was a self-serving exculpatory statement from Mr. Grant, who realized, oh boy, a kilo of cocaine has been found where I live. I could be charged with that. He did what many people would do, try to blame other people. But the question isn't who's ultimately right or not. The question is whether there's probable cause then, based on that, for the officers to search the vehicle. I understand that. And what I'm relying on is, I cited a case from this Court called Lanzon, which says in reviewing the prior, propriety of the ruling on the motion to suppress, the Court can consider evidence which was introduced at trial. And at trial, now, now under oath, Mr. Grant's clarified. He said, I did not see Webb and Joins arrive at the premises. I did not see them get out of the car. That doesn't mean that there wouldn't be probable cause, based on the earlier, what he had earlier stated. Yeah, what I'm asking the Court to find, that given the circumstances that are involved between those two divergent opinions, I think the first, the incriminating part is inherently unreliable. And I'm asking to the Court to find. And how would an officer know that at the time? Without the benefit of that trial testimony? Well, the case law says. That's something, that's. Well. That's not something the officer knows. No, not at the time. But the case law does says the Court can consider evidence introduced at trial to consider the propriety of the ruling on the motion to suppress. So I'm asking you to find. It would be clear error to find, if this is the basis for probable cause, that the meth was observed coming from the Nissan. Thank you. Thank you. Thank you, Mr. Suma. Ms. Kyle. Good morning, Your Honors. My name is Patricia Kyle. And I represent Brian Joines. Your Honor, in this case, as far as Mr. Joines is concerned, separate from Webb, we have no evidence of an agreement. We have nothing in the facts that will indicate any kind of conspiratorial interaction or conduct between Joines or Webb's or anyone else that will support a conviction for conspiracy. We do have, and I admit it, a choice of bad company on the part of Mr. Joines. And we admit that Mr. Joines was a drug user, a methamphetamine user. And for all I know, he may have been a customer of Mr. Webb's. So what do we know? We know the business about the shoe shop. And... Yeah, so we have the security footage that shows them together at the store a few hours before the search. Absolutely. Right. The footage shows your client holding an orange Nike shoe box. Yes. The officer testified that it appeared to be the same box that they found on the steps of the house. Correct. And that it contained nearly a kilo of meth as well as a receipt from the shoe store. Correct? Yes. But what... Your client and Webb were the only people outside the house with the box when the officers arrived, right? That is correct. However, what there was not found is that... If you'll give me one moment. Is there any evidence that your client abandoned a conspiracy at any point? I don't think there's any evidence that he abandoned one. What we don't have, Your Honor, is there was nothing that had Joins' name on it. There was nothing in the house that proved any connection to Joins. There were no fingerprints of Joins. There were no tests or analysis. Joins made no statement regarding his knowledge. No one else made any statement. Joins denied that the people inside the house had anything to do with the, quote, stuff. I think that's true. He'd be... I'm not sure that's the way it was presented. I think that's a slightly skewed way of presenting it, Your Honor. I think that he was... It was kind of taken out of context when he made that statement. But what we also... Mr. Joins was also seen getting out of the car where the meth was found, wasn't he? Well, I have... I've got a problem with that. I think that Mr. Grant's testimony is absolutely not credible. He said that he had not seen anything. He said he'd been in the house and that... Actually told multiple stories according to the police officer testifying in front of the jury, right? Exactly. And that we don't assess credibility. The jury would assess credibility, and the jury determined there was a conspiracy, correct? Well, I think that's true, but I also think that it was not sufficiently developed. Since Mr. Joins was not party to the motion to suppress and did not have the advantage of that environment, we're limited to what he said, and what Mr. Grant said at trial was both. And I don't think that... But even in the statement where he claimed he didn't see who got out of the car, he made a reference to who was driving and who was the passenger before the jury, correct? He made... No. That was in the motion to suppress. At trial, all he said was that he didn't see the... As I recollected, that he didn't see either Joins or Webb get out of the car, and that's pages 312 and 324 of the transcript. He said he didn't know how long Joins had been there. He suspected about 30 minutes before the police arrived, but he was inside, so he's not sure. That's at 323 and 329. He testified that the home was leased to Amanda, that someone that Joins had had a very brief romantic relationship with. Amanda, on the other hand, also was involved in drugs, and there were lots of drugs in the house. He never went... Joins never went in the house. Lots of other people did. There were lots of people. And most interestingly, the... If I may address, just for a moment, because I think this is important. Let me just... Okay. Both officers testified absolutely that the reason that they arrested Joins was that he was in constructive possession of a firearm wrapped in a large or extra-large T-shirt. Later, that turned out... And that's basis for arrest. Later, it turned out, thanks to Mr. Cook, who looked at it, that it was a lady's T-shirt. It was a little, tiny T-shirt. They said it was because Amanda had food stamps, Joins' food stamp card, and that there was male clothing. But the police even admitted that there were many other likely, more likely scenarios for ownership of that clothing than Joins. Because Grant had testified that a lot of people were in and out of there. Okay, Ms. Guile, you've saved a couple minutes for a little list here from Ms. Lern. Good morning. May it please the Court, Jordan Lern on behalf of the United States. I know there's a lot of ground to cover here. I think where I'd like to start is clearing up Randall Grant's testimony. Now, Grant did not testify at the suppression hearing. The testimony that came out of the suppression hearing came from Sergeant Cook, what Grant had told him, which was that he had seen Joins and Webb arrive at the house, arrive at the mobile home in the Nissan, that Webb was the driver and Joins was the passenger, and that the bag and the methamphetamine came in the Nissan, came from the Nissan. That testimony did not come in at trial. I think what Grant's testimony at trial was that he hadn't, I think he was clear that he didn't see them arrive. There was a point that he did note that they were outside working on the motorcycle, but there wasn't any testimony, as I recall the record, that he had seen them arrive. That was associated with the suppression hearing and not the trial. Thank you for clearing that up. And, but aside from that, I do, I'll take up the evidence that relates to Joins first. I do think there was sufficient evidence to support both convictions for defendant Joins. I'll note first, I don't believe there was a DOA from Joins with regard to these two counts. If that's right, then Joins' burden would be to show a miscarriage of justice. And I think on this record, I don't think he can meet that burden. I won't tell the court that this is the strongest case of conspiracy it's ever seen. It's not. It's circumstantial. But I think from the totality of the evidence, the jury can reasonably infer that Joins was tied to the residence. There was testimony from Randall Grant that Joins was in a relationship with Amanda, that he had stayed there a couple of nights a week. I think, as I recall the testimony, they were in the process of breaking up. But there was certainly evidence that tied Joins to the residence beyond what was found in Amanda Grant. I think to me, a reasonable jury could infer that Joins and Webb had arrived there together in the car and had divided the drugs between them. That's... There is the kilo found in the shoe box. There's kilo in the car. And the purity match. Given the footage from the security camera at the shoe store and finding them together on the porch, it seems to me a reasonable jury could infer all of that. Yes, that's... Even if the issue hadn't been preserved. Yes, that's exactly. The government agrees entirely with that. The only thing I would supplement to that is there was also testimony that the methamphetamine that was found in the Nissan and the methamphetamine that was found on the porch, the appearance was the same, the purity was the same, suggesting that they had divided it. And then Webb was tied to the car. There was testimony from Corey Leverett that he had borrowed the car that day. So I think a reasonable jury could infer that they had traveled together to obtain it, to divide it, and that it was a distribution quantity, so a conspiracy to possess with the intent to distribute. And I think there's also sufficient evidence tying Joins. It's not just proximity, right? He was tied to the mobile home. He told officers that the occupants of the mobile home didn't have anything to do with this stuff. With this stuff. Right, and the context, Cook was clear, because he was asked the question, the context of the conversation he was having with Joins was about the methamphetamine that was found. So I think a jury can infer stuff, they're referring to the meth. So I think there's sufficient, and also Randall Grant testified it wasn't his, that his daughter was a user, he had never seen her without those quantities. So I think altogether a jury could... Could credit that, it could credit that testimony. Sure, absolutely. So I'll shift gears then to the vehicle search, the motion to suppress. Judge Proctor, you asked a question about what the warrant said. If I've got part of the warrant correct, it says that officers can enter and search said premises and the curtilage thereof in any vehicles parked thereon. And so I think, I think there's probable cause to get into the car. I really think... My reading of that, and this may not be the cleanest way to deal with the case, it may be just an automobile exception question, because those are alternative theories for what would justify the search, correct? Yes, and Judge Walker had two alternative holdings, yeah. Judge Walker determined that the search of the car was not consistent with the warrant, but he seemed to think also the vehicle had to be parked on the curtilage as opposed to the curtilage and or the premises. What's your reading of the search warrant? So I agree with your recollection of the record. And to be honest, I think all parties sort of assumed and read the warrant the same way. The government certainly didn't argue that it had to be on the curtilage. I think there's case law from this Court that supports a broader reading of the warrant. I think this is an excellent example of why we don't, why this Court and I think the Supreme Court hasn't endorsed giving warrants a very technical reading because we're dealing with law enforcement officers who aren't thinking about this through the same way that we are. So there's a number of cases cited in our brief that seem to suggest when you have a warrant to search a particular premises, you are permitted within the scope of the warrant to search vehicles that are parked in the driveway or parked in close proximity to that premises. And so I don't think any of the warrants in those cases mentioned to the curtilage, but I don't think that's dispositive here. And even if, you know, Judge Walker made a finding of facts that the vehicle wasn't parked in the curtilage, we haven't challenged that on appeal. I don't think it's dispositive because even if this is outside the scope of the warrant, the question is whether or not it was objectively reasonable to think that the, whether it was objectively reasonable for law enforcement officers to think in this moment that the warrant gave them the authority to search the vehicle. And I think all factors considered, the testimony was that it was parked very close to the mobile home. I know there was some debate about how close and how much of it was on the right-of-way as opposed to the property, but by all accounts, it was very close. I think Judge Walker found within seven feet. His finding was that it was basically the parking spot for the mobile home. It's not only where Webb and Joynes parked. It's where the defense investigators, when they showed up to the home, it's where they parked. So it was sort of the parking space. There wasn't a formal driveway. It was late at night when they executed the warrant. So, and I don't think from the record that it was clear, there wasn't a clear separation between what would be the right-of-way and what would be sort of the mobile home lot. So I think all factors considered, it's not as if law enforcement saw a car parked clearly off the road and searched that or saw a car parked closer to another mobile home and searched that or went down the road. It was really clearly the car that was very much associated with the mobile home. So we think, we think we went on automobile exception, but I think it was... Both of the subjects are standing right next to the car trying to jump start a motorcycle, right? Right. It was, the car was clearly associated and it was, and Joynes was a target of the warrant. And he was outside the vehicle trying to jump the motorcycle using the vehicle. So I think it was entirely, absolutely reasonable for law enforcement to think that the warrant gave them the authority to search that car. If it was outside the bounds of the warrant, as Judge Walker found, I think there's clearly probable cause here. He, Judge Walker credited the testimony that they found the methamphetamine on the steps before they had searched the vehicle. He also credited Cook's testimony about what Randall Grant had told him that Joynes and Webb had arrived from the car and the bag that came from that vehicle as well. I know Grant, Grant's testimony is, it's a little, he's changed his story. I think there was three versions of the story. He gave two statements to law enforcement that night of the search. The first, the first statement is clear in the testimony. The first statement is where he identified Webb and Joynes coming from the vehicle and the bag coming from the vehicle. And it was clear on the record, and I think Judge Walker found, that that happened before the vehicle search. I know when Grant testified at trial, he said, yeah, that's not really what I saw. But I don't even think, I don't think his testimony is necessarily even consistent with Investigator Cook's testimony because he doesn't say that's not what I told law enforcement. He says, I think I might have misspoken, or it seems to be that there was some confusion about what he had communicated to law enforcement and what Investigator Cook had perceived. So I think what matters is what law enforcement heard and what they knew. And there appears to be no dispute about what he actually told law enforcement. Right. The trial testimony is, it's a little unclear to sort of get to the bottom of it, but Grant didn't testify at the suppression hearing, and Judge Walker made a credibility finding in favor of the law enforcement officers at the suppression hearing. So I don't think there would be enough there to sort of jettison what Judge Walker found. I also think, though, even without Grant's statement, I think, I think we may, there'd be probable cause, just based on the fact you've got a kilogram of methamphetamine on the steps of the mobile home. The target of the warrant is there. The basis for the warrant is that Joynes was selling methamphetamine out of the house. I think even if Randall Grant hadn't said anything, I think there's still probable cause to get into that vehicle and search it. If the Court has, I'll shift gears unless the Court has any further questions about the vehicle. You've addressed the only issues that have been raised this morning, haven't you? Yes. All right. If there are no further questions, then I will rest on our brief, and we will ask this Court to affirm Mr. Joynes and Mr. Webb's convictions. Thank you. Thank you. Mr. Sima, you have two minutes. Judge Proctor, I believe you're attempting to draw an unwarranted distinction between the premises and the curtilage. The premises is very much a property law concept, and I know in the record there was a discussion between a borderline, between a right-of-way, and the property. And my understanding of that discussion is they're not talking about the property belonging to the mobile home owner or the resident. They're talking about the property of the mobile home park. Actually, I'm not attempting to draw anything, but what I would like you to do is respond to the government's point that we shouldn't view a search warrant so technically as you're trying to do now, and understanding that judges and lawyers generally don't provide the factual information for a search warrant and the information about premises versus curtilage. What do you say to that? Well, I understand that it's not a very technical distinction or test, but I would go back and rely on my argument that there was no probable cause. And I would say... What do you make of the fact that we have two kilo, two separate kilos that have similar purity, one in a box right on the porch, the other found in the car, your clients right next to the car when the officers roll up, and depending upon what you make of Grant's two different statements, it's pretty clear that your client and his co-defendant were in the car when it pulled up at the mobile home. All I have to say about that is the after-the-fact discovery of evidence cannot be bootstrapped to rely on whether the prior search was lawful. All of that predates the actual search. All those facts were known to the officers before they do the automobile search. I have to go back to my prior argument. Well, according to Judge Walker, I mean... I understand. Yeah, I mean, it's true. I take that back. The kilo found in the car wasn't known, but everything else was. Yeah. Right? They arrived in the car together, clearly reasonable inference. They've been at the shoe store together. The shoe box, they're placed with it together. Come on. And very shortly, very briefly, I can only go back to my other argument that the statement from Mr. Grant that was recounted by Officer Cook was just too unreliable for the judge to rely on it as probable cause. Thank you. Thank you very much. Thank you, Mr. Sumo. I know you were court appointed. We appreciate you accepting the appointment. Ms. Kyle? No, actually, it's Ms. Kyle who was court appointed. I apologize. Mr. Sumo, you're from the FPD. We appreciate your public service as well. Thank you. I just want to address the shoes for a moment. We have an orange shoe box, and we have the video, yes? But we also have Tammy Cooper's testimony. Tammy Cooper was the store employee who sold it. What we don't have is Lawrence assumed that they were the same box. I mean, Nike shoe boxes are Nike shoe boxes. No one- With the receipt from the shoe store. No one actually examined- Did that receipt have a time stamp on it? The receipt had a time stamp, but the box- Matched the security footage? No, I'm not sure if it matched the security footage, but I do know that there was no inquiry into the shoe box itself. There were no fingerprints on it. No one ever looked at anybody's feet to see if maybe somebody was wearing the shoes. They- Tammy testified that- I don't think the shoes were the big issue. No, I don't think so either, but- In better shape if they found shoes in the box. Absolutely, unless they were stuffed with something. But the box was there, but Tammy told how you could identify the box. They, as being the same box, the officers never asked her about it. Is this the box? Do you recognize this box as being the box? And I just think that what we have here is a situation where Joins- He may be a drug user. He may not be a nice person. He may be. But he was- It's a matter of mere presence. We do have no agreement, no overt acts, and no intent shown. I ask you to reverse. Thank you, Ms. Kyle. Thank you. CSX v. General Mills.